UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BRADY COLE #689970,

           Petitioner,                     Hon. Robert Holmes Bell

v.                                      Case No. 1:10-cv-00681-RHB-PJG

CARMEN PALMER,

           Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Following a jury trial in Kent County Circuit Court, Petitioner was found guilty of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and he was sentenced as a habitual offender, MICH. COMP. LAWS § 769.12, to twenty to forty years' imprisonment.  Petitioner raises three grounds for relief:

    I.     THE COURT FAILED TO ENSURE THAT THE INITIAL WAIVER OF THE RIGHT TO COUNSEL WAS KNOWINGLY, VOLUNTARILY AND UNEQUIVOCALLY MADE.  THE COURT FAILED TO OBTAIN A SUBSEQUENT WAIVER AT TRIAL.

    II.    THE TRIAL COURT REPEATEDLY CRITICIZED THE DEFENDANT. MENTIONED HIS RIGHT TO APPEAL.  SUGGESTED THAT HE BE SWORN AND TESTIFY. DENIED HIM HIS RIGHT TO AN IMPARTIAL JUDGE AND HIS RIGHT TO DUE PROCESS.

    III.   THE DEFENDANT PRESENTED EVIDENCE TO DEMONSTRATE THAT POLICE LIED TO MRS. COLE TO OBTAIN CONSENT TO SEARCH.  THE COURT ABUSED ITS DISCRETION IN DENYING PRE-TRIAL MOTION TO SUPPRESS EVIDENCE.

(Petition at 7, 8, 10, Dkt. 1, Page ID 6, 8, 11).

Respondent has filed an answer to the petition. (Respondent's Answer, Dkt. 7). Respondent argues, as a preliminary matter, that the first two grounds are procedurally defaulted by Petitioner's failure to preserve them for review on direct appeal, and that the third ground is barred from habeas review by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). (*Id.* at 24-25, 28, 30-31, Page ID 139-40, 143, 145-46). Respondent alternatively asserts that each of the first two grounds lacks merit. (*Id.* at 26-29, Page ID 141-44).

The Honorable Robert Holmes Bell has referred this matter to me for issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Habeas Corpus Cases in the District Courts. Upon review of the record and applying the standards under the Antiterrorism and Effective Death Penalty Act, I find that grounds one and two lack merit, and that the third ground is barred by the doctrine of *Stone v. Powell*. Accordingly, I recommend that the petition be denied.

## Procedural History

### A.    Trial Court Proceedings

The trial testimony established the following:

August 27, 2007, Susan Ball picked up her two teenage sons from school and took them home. (Trial Trans. Vol. II, Dkt. 21, at 37-39, 136-37, 162-63).[1]  After entering their home, the boys encountered Petitioner running out of their parents'

---

[1]Henceforth, citation to the trial transcript will be abbreviated as "TT," with the volume number indicated, e.g., "TT-II."

bedroom, carrying a pillowcase and a jewelry box. (*Id.* at 39-40, 45, 137-40).  Petitioner ran to the front door of the house, but he had trouble opening the front door. (*Id.* at 44-46, 139-41, 164-65).  As the door opened, it struck him on the head and knocked off his cap, which was left behind. (*Id.* at 142-143, 165-66).  Petitioner fled from the Ball home, and Ms. Ball and one of her sons chased him down the street a short distance. (*Id.* at 46, 48, 144, 167).  The Balls then called the police. (*Id.* at 48, 144, 168).

Upon returning to her home, Ms. Ball discovered that a jewelry box and a jar of change were missing from her dresser, and a pillowcase was missing from one of her pillows. (*Id.* at 50-52).  She recovered some of the jewelry from her front lawn. (*Id.* at 53).

Grand Rapids police officers used a tracking dog in the search for the perpetrator. (TT-III, Dkt. 22, at 94-96, 100-01).  The dog led the officers to a house in the same neighborhood as the Ball home, which was later determined to be the home of Petitioner's mother. (*Id.* at 102; TT-IV, Dkt. 23, at 7-8).  A mail carrier, who was working a route in the neighborhood that day, advised the officers that she had seen a man matching the description of the perpetrator previously coming and going from that house. (TT-III at 12-16, 103-04).  Two officers made contact with Petitioner's mother at that address, although they did not know at the time that she was related to him. (TT-IV at 7-8).  The officers asked Ms. Cole for consent to search her house. (*Id.* at 7).  Ms. Cole initially declined, but she changed her mind and consented after the officers explained that they were concerned for her safety. (*Id. at* 65-67).

When the officers entered the home, they found and arrested Petitioner.  (*Id.* at 32-33).  He had a cut over his left eyebrow.  (TT-III at 117; TT-IV at 33; TT-V, Dkt. 24, at 13-15).  Ms. Ball's jewelry box was recovered from Petitioner's home, and DNA analysis later revealed that blood found on the box was that of Petitioner's.  (TT-II at 122-23; TT-IV at 35, 87; TT-VI, Dkt. 25, at 110-18).

Petitioner was charged with first-degree home invasion.  At the preliminary hearing, Petitioner's counsel indicated that Petitioner wished to represent himself.  (Prelim. Trans., Dkt. 10, at 3).  The district judge asked Petitioner if he wished to represent himself, warning him:  "[W]hen you operate on yourself on the operating table, I hope you stay alert because if not, you'll bleed to death on the operating table." (*Id.*).  Petitioner stated that he understood, and the judge again asked if he wished to represent himself, to which Petitioner said, "Yes, your honor."  (*Id.*).  When Petitioner started to give his reasons, the court cut him off, saying, "I don't need to know all that. The answer is yes, so—" and Petitioner cut off the court, saying, "Well, it's definitely yes."  (*Id.* at 3-4).  The court relieved Petitioner's counsel, and allowed Petitioner to represent himself.  (*Id.* at 4).

During the preliminary examination, Petitioner had to be admonished on several occasions not to testify when cross examining the witnesses.  (*Id.* at 14-15, 23, 32). Based on the testimony at the preliminary examination, the district judge bound Petitioner over to stand trial in circuit court.  (*Id.* at 37).

A pretrial conference was held before the Circuit Court, at which Petitioner reaffirmed that he wished to represent himself.  (Pretrial Conf. Trans., Dkt. 11, at 4-5,

12, 18).  The circuit judge asked Petitioner why he wished to represent himself, and Petitioner responded that he did not believe a public defender would defend him well enough, especially with respect to "question[ing] the police about, or expos[ing] the police about . . . planting evidence, falsifying documents, [and] destroying evidence[.]" (*Id.* at 4-5).  The judge asked Petitioner if he wanted a different attorney, and Petitioner responded, "No, I want to represent myself."  (*Id.* at 5).  Later in the conference, the following colloquy occurred:

> The Court: I would tell you, Mr. Cole, that—you seem smart enough to know that these are serious charges against you.
>
> [Petitioner]: Exactly.
>
> The Court: And, you know, a little knowledge sometimes is a dangerous thing, as they say.
>
> [Petitioner]: Yup.
>
> The Court: And if I had charges against me where my potential penalty was life in prison, I would think I would want somebody other than just myself, and I presumably have a little more knowledge than you do, I'm not sure I would want to represent myself.  There's an old saying that an attorney who represents himself has a fool for a lawyer.  And it may be the same for non-attorneys, perhaps even more so.  I'm willing to appoint a different attorney to – I'm not going to give you unlimited, you know, until you get somebody you like, but I'll – and I don't usually do this, but you want an attorney appointed to represent you, I'll appoint someone different than the Private Defender's Office to do it.
>
> [Petitioner]: Well, I would like to ask your Honor – and I believe that saying that you just quoted sir.  However, if it came down to a choice between an attorney that wasn't working for you to represent you, or you represent yourself, I think it would be wiser for a man to represent himself.

| | |
|---|---|
| The Court: | That's fine. |
| [Petitioner]: | That attorney won't ask the questions that needed to be asked. |
| The Court: | You can make that decision. |

(*Id.* at 11-12). When Petitioner asked if the court could appoint co-counsel, the circuit judge advised Petitioner that he would have stand-by counsel assigned for purposes of consultation. (*Id.* at 12-13).

On November 9, 2007, the Circuit Court conducted a motion hearing, during which Petitioner expressed his concern that the order appointing standby counsel mistakenly said that the standby counsel had been appointed to represent him. (Hrg. Trans., Dkt. 12, at 3). The following colloquy ensued:

| | |
|---|---|
| [Petitioner]: | I would like you to clarify that I don't wish to have nobody represent me but myself and that I haven't seen this [standby counsel] Fred Johnson nor wish to see him. I don't want no consulting lawyer or nothing else in my case. I want the record to reflect that. |
| The Court: | Why don't you want somebody to consult with? |
| [Petitioner]: | Because I don't want to. I want to represent myself. |
| The Court: | Well, you have an interest in this and so does the Court sometimes. My intent was to have somebody available not to represent you, you can represent yourself, but to have someone available. If something comes up you can consult with him or her as you see fit. |
| [Petitioner]: | Well, I object to it. |
| The Court: | You don't want that? |
| [Petitioner]: | I don't want nobody representing me as you got on this paper. Actually it says on this paper that the defender's |

-6-

office told you they weren't able to represent me so you allowed them to withdraw and appoint this guy but that can't be correct because I've represented myself since I've been in custody.   And Judge Logan is the one who acknowledged my pro per as letting me during my preliminary.  So if someone came to you saying they was representing me and was able to do so any longer as this paper reflects then it was a fraud.

The Court:     No, there's no fraud. We appoint counsel pretty routinely because you're one of a very few people who doesn't want a lawyer—

[Petitioner]:  Well, no I'm saying with respect—

The Court:     —who wants to represent themselves and it's no problem. If you want to represent yourself I don't have a problem with that.

[Petitioner]:  Okay. So I'm not consulting with anyone. I feel comfortable representing my own case.  Okay, then I have—

The Court:     You know, I'm still going to have him here. You don't have to talk to him or you don't have to do anything with him. He'll be here in case you change your mind.  Like I say, you're not the only one who has an interest in this. I don't want to hear later on that you didn't have any ability to consult with anyone and, you know, he doesn't have to represent you but we're going to have him here.

[Petitioner]:  Okay, but I object to—it's your Honor's, you know—

The Court:     Why do you object to somebody being here?

[Petitioner]:  Well, I mean, I object to, well, on this paper you got him down as representing me.

The Court:     What paper are you referring to?

[Petitioner]:  I'm referring to this order you put in saying that he's being—

The Court:   Let me see what he's talking about here.  All right. You haven't talked with this new attorney?

[Petitioner]:   I refused.

The Court:   Tell Mr. Johnson that while he's been appointed to be here for consultation that the defendant does not— specifically does not want him to go out to the jail. He does not want to talk to him. So the information on this greetings about asking Mr. Johnson to go out and talk with the defendant is impossible.  Just tell him to disregard that. Okay.

[Petitioner]:   So the Court does acknowledge that I am representing myself and no one else?

The Court:   Yes, sir. You are representing yourself and it's—

[Petitioner]:   All right. Thank you, your Honor.

(*Id.* at 3-6).

Another motion hearing was held on December 14, 2007, during which the circuit judge highlighted to Petitioner some of the disadvantages of self-representation. (Hrg. Trans., Dkt. 13, at 20).  The circuit judge stated:  "And I've told you and I've offered you, you can have an attorney.  You're the one that doesn't want an attorney. I've told you you could have one.  I appointed one to represent you.  You refused to use that attorney," to which Petitioner responded, "Exactly." (*Id.*).

In a January 11, 2008, hearing, Petitioner advised the circuit judge of his intent to present evidence that he was at his son's school at the time the crime was committed.  (Hrg. Trans., Dkt. 14, at 16).  The following colloquy ensued:

The Court:   If you have an alibi, you better read up on what the requirements are for getting an alibi in.

[Petitioner]:   I'm just gonna have the schoolteacher come in and testify—

The Court:    No, wait.  Listen to me a minute.  You don't want to be
              represented by a lawyer.

[Petitioner]: Right.

The Court:    Okay, that's your choice.  But understand there are rules
              that have to be followed whether you're represented by a
              lawyer or not.  There are alibi rules.  You can't just drop it
              on the other side at the time of the trial.  There are things
              you have to do.

[Petitioner]: Okay.

The Court:    All right?  I'm helping you out, I'm telling you there are
              things that you have to do before you can submit an alibi
              defense.

[Petitioner]: Okay.

The Court:    So you better—if you're going to go it on your own and not
              have an attorney represent you, you better be aware of
              those types—that's just one example of the pitfalls you may
              have if you want to go it on your own.

[Petitioner]: I understand, your Honor.

(*Id.* at 16-17).

On March 14, 2008, the Circuit Court conducted a motions hearing in which

Petitioner raised an issue relating to his possible extradition to California on an

unrelated charge.  (Hrg. Trans., Dkt. 18, at 20-24).  The circuit judge attempted to

explain to Petitioner that his extradition to California was not before the court, again

noting the benefits of legal counsel:

The Court:    Do you have any rights about that?  You may.  You're the
              one who doesn't want an attorney to consult with.  If you
              want an attorney to consult with, maybe you could consult
              with him and get some answers from your attorney.  I am
              not your attorney.

[Petitioner]: Okay, I don't want an attorney.

The Court:   Okay.

[Petitioner]: I feel quite satisfied representing myself.

(*Id.* at 23).

Later in the same hearing, Petitioner asked about introducing fingerprint evidence, the circuit judge noted: "If you had an attorney, Mr. Cole, you could have the attorney tell you how to get it in, or you could have the attorney do it." (*Id.* at 27). Petitioner responded: "I'll figure out how to do it." (*Id.*).

The jury trial began on April 30, 2008. (TT-I, Dkt. 20).  During trial, the circuit judge repeatedly admonished Petitioner for arguing with, or attempting to introduce evidence through his questioning of the state's witnesses. (*See, e.g.,* TT-II, Dkt. 21, at 101-02, 152; TT-III, Dkt. 22, at 133, 147-150, 167, 171; TT-V, Dkt. 24, at 89, 100, 103-105; TT-VI, Dkt. 25, at 82).  The judge advised Petitioner both about his right to testify and his right not to testify, and he explained that he would instruct the jury not to hold a decision not to testify against Petitioner. (TT-II at 101-102).  The judge further advised Petitioner, however, that he could not substitute his statements during cross-examination of the state's witnesses for his sworn testimony. (TT-V at 103-04).  The judge also explained that he would instruct the jury not to consider as evidence Petitioner's unsworn statements. (*Id.* at 104).

After admonishing Petitioner on one occasion on the third day of trial, the circuit judge advised the jury: "I'll tell the jury this, and I'm not trying—I don't have a side to pick on this matter.  You know, I don't know—it's for you to determine what the

facts in this case are.  Not me, it's not my job." (TT-III at 148).  At the end of that day
of trial, the circuit judge again addressed the jury:

> I want to – I've been involved here more this afternoon than I usually am,
> and I apologize to you.  Please do not interpret anything I say here, or any
> way I say it, as being favoring one side or the other.  My job as judge is
> simply to keep the matter proceeding in an appropriate way, to rule on
> evidence and so forth.  I'm not here to be the prosecutor, I'm not here to
> be a defense attorney, but I recognize that I have been a little more
> involved today than usual, and I've done that to try to keep things moving
> and to try to clarify, as I understand, what's coming in.  It's your decision,
> after you've heard all the evidence, on how to arrive at a verdict.  I don't
> have any opinion sitting here as to that.  I don't care what your decision
> is, I just ask you to be – consider it fairly and make an appropriate
> decision based on the evidence as you determine it to be after the end of
> the trial.
>
> I want to emphasize what I told you earlier.  If any of you have any
> suspicion or opinion based upon what I've said during this trial, the
> questions I've asked, the comments I've made, the objections I've ruled
> on, anything like that, that I have an opinion as to how you should decide
> this case, then disregard it.  Number one, I don't.  And number two, if I
> did, it wouldn't make any difference.  It's not my function, it's your
> function.  All I want you to do is be fair to both sides here, and you're the
> ones that make up these decisions about facts, not me.  So just, you know,
> I'm – I'm trying to keep it moving, I'm trying to be fair to both sides, but
> if I have given any indication either way otherwise, disregard that.

(TT III at 188-189).

The jury deliberated for four hours, and found Petitioner guilty.  (TT-VII, Dkt.
26, at 110-113).  The Circuit Court sentenced Petitioner, as a fourth felony offender,
to twenty to forty years' imprisonment.  (Sent. Trans., Dkt. 27, at 32, 48).

## B.  Direct Appeal

Petitioner appealed his conviction to the Michigan Court of Appeals, raising the same three issues pending before this Court.  His conviction was affirmed.  *People v. Cole*, No. 286408, 2009 WL 4143999 (Mich. Ct. App. Nov. 24, 2009).

The appellate court reviewed the validity of Petitioner's waiver of right to counsel under plain error, finding that he had not preserved the issue.  *Id.* at *1.  The court noted that, under Michigan law, a trial court must make three findings before granting a criminal defendant's request to proceed *in propria persona*:  "(1) 'the waiver request must be unequivocal'; (2) 'the trial court must be satisfied that the waiver is knowingly, intelligent, and voluntarily made'; and (3) 'the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business.'"  *Id.* (quoting *People v. Rodney Williams*, 470 Mich. 634, 642 (2004)).  The trial court must also comply with the provisions of MICHIGAN COURT RULE 6.005(d), which requires trial judges to inform the defendant of the pending charges and potential penalties, to advise the defendant of the risks of self-representation, and to afford the defendant the opportunity to consult with retained or appointed counsel.  *See People v. Cole*, 2009 WL 4143999, at *1.

Having reviewed the record, the Michigan Court of Appeals noted the following concerning the district judge's handling of the waiver:

> The district court's colloquy with defendant falls short of our Supreme Court's mandate in *Anderson*, *supra*, and MCR 6.005(D).  However, a defendant may not raise errors or irregularities relating to the preliminary examination on appeal, unless such errors or irregularities were timely raised before or at trial.  Defendant did not do so. Further,

reversal is not warranted on the basis of an error at the preliminary examination, where defendant received a fair trial and was not otherwise prejudiced.

*People v. Cole*, 2009 WL 4143999, at *2 (citing, *People v. Anderson*, 398 Mich. 361, 367-68 (1976) (other citations omitted)).

As for the Circuit Judge's handling of the request for self-representation, the Michigan Court of Appeals stated:

> We conclude that the record reflects that the circuit court substantially complied with MCR 6.005(D). Defendant was fully apprised of the charges against him, where he was present and represented himself at the preliminary examination. Further, the circuit judge explained to defendant that he faced serious charges, and that he could face life imprisonment based on his status as an habitual offender. The circuit judge further addressed the risks of self-representations by stating that "if I had charges against me where my potential penalty was life in person, I would think I would want somebody other than just myself, and I presumably have a little more knowledge than you do, I'm not sure I would want to represent myself." Additionally, the circuit judge appointed standby counsel for defendant early in the proceedings, and standby counsel remained with defendant throughout trial. The circuit judge's advice certainly rises to a level that we previously deemed appropriate.

*Id.* (citing *People v. Hicks*, 259 Mich. App 518, 531 (2003)).

With respect to Petitioner's claim of judicial bias, the appellate court recognized that the comments and admonitions of the trial judge to which Petitioner takes exception constituted a concerted effort to control the mode and manner of the introduction of evidence:

> The record demonstrates that the trial court discerned whether points of inquiry were relevant; focused questions to ensure that the testimony remained relevant; precluded repetitious questions; prevented defendant from mischaracterizing testimony; prohibited defendant from testifying while asking witnesses questions; and properly admonished defendant for

arguing with witnesses.   There is no evidence of judicial bias, and reversal is not warranted.

*People v. Cole*, 2009 WL 4143999, at *4.

The Michigan Court of Appeals rejected Petitioner's claim that the search of his mother's home violated his Fourth Amendment rights:

> Here, the totality of the circumstances demonstrated that defendant's mother consented to allow police to search the residence, and that consent was valid.   While defendant essentially claims that the police used oppressive or deceptive tactics to secure his mother's consent to search the residence, a recording of the search that was admitted at the hearing refutes his claims. . . .   Even though defendant's mother initially declined to consent to the search, a police officer explained the gravity of the situation.   The police officers obviously wanted defendant's mother to reconsider, but the recording does not demonstrate that they used unduly or improper coercive tactics to do so.   Nothing precluded the police from asking defendant's mother to reconsider a request for consent, where she merely gave a conditional rejection because her husband was not yet home.   Although she would have preferred to have her husband present, she unequivocally, specifically, and freely and intelligently gave her consent to the police to search her residence: "Go on and do it. Go on and do it". . . .   Here, these facts establish an objectively reasonable basis for believing that defendant's mother's consent to search was valid.   Thus, the trial court properly concluded that, viewed in the totality of the circumstances, the consent to search was valid.   Ultimately, we conclude that the trial court's determination was not clearly erroneous.

*Id.* (citations omitted).

Petitioner's application for leave to appeal to the Michigan Supreme Court was denied April 27, 2010.  (Order, Dkt. 29).  He timely filed this petition on July 16, 2010. (Petition, Dkt. 1).

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, Pub. L. 104–132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, __ U.S. __, 135 S.Ct. 1, 4 (2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court. *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S.Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.

Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1706–07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S.Ct. at 784; *see also Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S.Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts de novo review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S.Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue de novo where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n. 4 (6th Cir. 1989).   Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

Respondent argues that Petitioner's claims as to issues I and II are procedurally defaulted because petitioner did not preserve them for review on direct appeal.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Clifton v. Carpenter*, 775 F.3d 760, 763-64 (6th Cir. 2014); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will

result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Federal courts are not required to address a procedural-default issue, however, before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  Where, as here, the procedural default issue raises more questions than the case on the merits, the court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

I.  **Petitioner's Waiver Of His Right To Counsel**

Petitioner claims that the state District Court failed to follow Michigan law concerning the requirements for obtaining a valid waiver of his right to counsel.  He also claims that the Circuit Court failed to obtain a subsequent waiver at trial.

Petitioner's state-law claim is not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a) (An application for habeas relief on behalf of a person in custody pursuant to a state court judgment may be considered "only on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States.").

In *Wilson v. Corcoran*, the Supreme Court held:

> [I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)); *see also Werth v. Bell*, 692 F.3d 486, 498 n.12 (6th Cir. 2012) (noting that the Supreme Court has repeatedly held that federal habeas relief does not lie for errors of state law).

Petitioner does not explicitly assert any federal right that was purportedly violated here. Giving him the benefit of the doubt, however, this Court will review his claim as if it were brought under the Sixth Amendment.

The Sixth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that a criminal defendant shall have the right to the assistance of counsel in his defense. *See* U.S. CONST. AMEND. VI; *see also Faretta v. California*, 422 U.S. 806, 832-34 (1975); *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 154 (2000). This right necessarily implies its corollary, that a defendant has a right to proceed without counsel and represent himself. *Faretta*, 422 U.S. at 832-34. "[F]orcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Id.* at 817.

Given the importance of the right to counsel, however, a defendant's request for self-representation must be unequivocal and his waiver of his right to counsel and the decision to proceed pro se must be knowing, voluntary and intelligent. *See id.* at

834-35; *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938).  For any such waiver to be effective, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"  *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).  Whether a defendant's choice was made with "eyes open" generally "depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Zerbst*, 304 U.S. at 464-65.  The Supreme Court has "not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel," *Iowa v. Tovar*, 541 U.S. 77, 88 (2004), and there is "no sacrosanct litany for warning defendants against waiving the right to counsel." *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005).[2]

"A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed

_____

[2]The Sixth Circuit requires federal district courts to conduct an inquiry as set forth in *1 Bench Book for United States District Judges* 1:02-2 (3d ed. 1986) before accepting a waiver of a right to an attorney. *King v. Bobby*, 433 F.3d 483, 492 (6th Cir. 2006); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987).  This type of formal, detailed inquiry is not required by clear Supreme Court precedent, however. *See King*, 433 F.3d at 492.  Accordingly, in the context of federal habeas review, there is no script that a state court must follow in determining whether a criminal defendant has made a "knowing, voluntary, and intelligent" waiver of counsel. *Id.*  Rather, the state court must reasonably apply Supreme Court precedent, which requires looking at the "whole record" to determine if the defendant made a knowing and intelligent waiver. *Id.*

with counsel, thereby violating his right to self-representation." *Akins v. Easterling*, 648 F.3d 380, 395 (6th Cir. 2011).  It is Petitioner's burden to prove that he did not competently and intelligently waive his right to the assistance of counsel.  *Id.*

The record in this case demonstrates that Petitioner knowingly, voluntarily, and intelligently waived his right to counsel.  While the District Court's discussion with defendant concerning his request to represent himself was somewhat cursory, the Supreme Court has recognized that, "at earlier stages of the criminal process, a less searching or formal colloquy may suffice." *Tovar*, 541 U.S. at 89.  This is because, at these earlier stages "'the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial.'" *Id.* at 90 (quoting *Patterson v. Illinois*, 487 U.S. 285, 299 (1988)).

It is evident from the record, as noted in the procedural history above, that the Circuit Court repeatedly discussed with Petitioner the dangers and disadvantages of self-representation.  Despite these warnings, Petitioner repeatedly insisted on representing himself.  As an habitual offender, he had considerable experience with the criminal justice system.[3]  The Circuit Court also appointed stand-by counsel, over Petitioner's objection, to assist Petitioner at trial, should he choose to consult with counsel.[4]

---

[3]Petitioner had incurred at least six felony convictions in six separate cases prior to his prosecution in the underlying case.  (Sent. Trans., Dkt. 27, at 3-4).

[4]Appointment of standby counsel over a criminal defendant's objection is permissible.  *McKaskle v. Wiggins*, 465 U.S. 168, 178–79 (1984).

The Circuit Court ensured that Petitioner was "aware of the dangers and disadvantages of self-representation" and that "his choice [was] made with eyes open.'" *Faretta*, 422 U.S. at 835.   Accordingly, it cannot be said that the court acted unreasonably or that it violated any clearly established federal law.

## II.   Judicial Bias

Petitioner claims that the trial judge's actions during the trial evinced a bias that deprived Petitioner of his constitutional right to due process.  He cites to instances in which the judge questioned witnesses and admonished him during the trial. Petitioner has not shown, however, that the decision of the Michigan Court of Appeals, rejecting his due process claim and finding "no evidence of judicial bias," 2009 WL 4143999, at *4, was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Nor has he established that the appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

Due process demands that the trial judge be unbiased.  *In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases."). "[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citation omitted); *Tumey v. Ohio*, 273 U.S. 510, 535 (1927).

A judge is unconstitutionally biased if he has "a deep-seated favoritism or antagonism that makes fair judgment impossible." *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013) (citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971)).  The Supreme Court held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Allegations of judicial bias on the grounds of "poor decisionmaking" that does not infect the trial process do not warrant habeas relief. *Getsy v. Mitchell*, 495 F.3d 295, 312–13 (6th Cir. 2007) (*en banc*).  The bias inquiry is an objective one.  *Coley*, 706 F.3d at 750 (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)).

In this case, the trial judge's admonishments resulted from Petitioner's improper attempts to inject irrelevant information into the trial, to testify during his questioning of witnesses, and to comment on the credibility of the state's witnesses.  These matters fall squarely within the province of a trial judge.

Moreover, the circuit judge explicitly instructed the jury not to consider his rulings – including those relating to Petitioner's conduct during the trial – in deciding the case.  (TT III, Dkt. 22, at 188-189).  These instructions are indicative of the trial judge 's interest in ensuring the fairness of the trial.

The Michigan Court of Appeals recognized that the comments and admonitions of the trial judge constituted a concerted effort to control the mode and manner of the introduction of evidence.  The court also concluded that "[t]here is no evidence of judicial bias, and reversal is not warranted." *People v. Cole*, 2009 WL 4143999, at *4. This decision easily withstands scrutiny under the AEDPA standard.

## III.    The Denial Of The Motion To Suppress Evidence

In his third ground for habeas relief, Petitioner contends that the trial court "abused its discretion in denying [his] pretrial motion to suppress evidence." (Petition at 10, Dkt. 1, Page ID 11). Petitioner claims that the police officers lied to his mother to get her to consent to a search of her home. (*Id.*).

On March 26, 2008, the Circuit Court conducted an evidentiary hearing on Petitioner's motion to dismiss the charges on the basis that the officers violated his Fourth Amendment rights. (Motion Trans., Dkt. 19). At the conclusion of the hearing, the circuit judge noted that, based on the audio recording of the officers' conversation with Petitioner's mother, it was "clear . . . that consent was given." (*Id.* at 109-10). Accordingly, the judge denied the motion. (*Id.* at 111).

Petitioner raised this issue in his appeal to the Michigan Court of Appeals. That court affirmed the decision of the Circuit Court after having considered the merits of Petitioner's claim. *People v. Cole*, 2009 WL 4143999, at *4 (citations omitted).

It is not necessary for this court to reach the merits of petitioner's Fourth Amendment claims, however, as habeas review is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.* at 481-82. In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment

claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72, 76 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326-27 (6th Cir. 2001).

In the present case, petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 217 Mich. 423, 425-26 (1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 119 Mich. App. 289, 296-97 (1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges. *See Good v. Berghuis*, 729 F.3d 636, 639-40 (6th Cir. 2013); *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

Second, to satisfy the remaining prong of *Stone v. Powell*, petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See,*

*e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).   The doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.   Rather, it is clear that the Michigan courts gave petitioner's Fourth Amendment claim full and proper consideration in their review of his claim.   The trial court considered petitioner's claim on the merits and rejected it.   (*See* Motion Trans. at 108-11, Dkt. 18).

The Michigan Court of Appeals reviewed petitioner's claim on direct appeal and concluded that his Fourth Amendment rights were not violated.   *People v. Cole*, 2009 WL 4143999, at *4.   Because petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claims are barred on habeas review.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Respectfully submitted,

Date: March 10, 2015

 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).